[No. 7,840.—Department One.]

## ANTHONY CLARK v. JENNIE B. RITTER ET AL.

MINING PARTNERSHIP—NONSUIT.—In an action for the dissolution of a mining partnership, and for an accounting, it appeared from the plaintiff's evidence that, prior to the partnership agreement out of which the plaintiff's claim for an accounting arose (and to which the defendant H. was neither a party nor privy), one of the joint owners of the mining claim had mortgaged her interest to H., and that, subsequently to said agreement, H. had purchased the mortgaged property at a foreclosure sale. *Held:* A nonsuit was properly granted as to H.

APPEAL from a judgment for the defendant Hayward and from an order denying a new trial in the Superior Court of Placer county. MYRES, J.

The complaint alleged, in effect, as follows: About May 1, 1871, George Reamer, Jennie Ritter, Eugenie Ritter, and John Brown owned and were working, as partners, a mining claim in Placer county, California, known as the "Jersey Claim," and continued to hold and work said claim, as partners, until May 29, 1877, when Morgan Howell and others succeeded to the interest of Reamer (an undivided five-eighths). These owners continued to work said claim, as partners, until June 6, 1878, when said Brown sold and conveyed his interest (an undivided two-eighths) to defendant Hayward; and said claims continued to be worked in partnership until the twelfth day of the same month, when Hayward sold and conveyed the interest acquired from Brown to Fred Howell, Thomas Rees, Morgan Howell, and Lewis Abrahams; and said claims continued thence to be worked in partnership by the owners until July 1, 1878, when the parties last named sold and conveyed an undivided interest in said claim to Peter Edwards and William Llewellyn; and the owners continued thence to work said claims, as partners, until November 1, 1879, when all of the owners, except Jennie and Eugenie Ritter (the latter of whom had become, by marriage, Eugenie Housaye), sold and conveyed their interest to the plaintiff; and from that time to the commencement of the suit, the said Ritter, Housaye, and the plaintiff, continued to work the said claim as partners.

At the time of the plaintiff's purchase large amounts of money had been spent by the several owners in working the mine, the claims for which were assigned to the plaintiff. There were also assigned to him debts due from the partnership to various parties for work and labor, and he himself, after his purchase, also expended a large amount upon the mine. On the fourteenth of February, 1877, Sarah Reamer (then the owner of an undivided five-eighths of the claim) mortgaged her interest to Hayward; and on the twenty-ninth of May, 1877, Howell and others, who had succeeded to the interest of Sarah Reamer, mortgaged the interest thus acquired to the plaintiff, who, before he bought into the claim, assigned his mortgage to defendant Becket. Afterwards, and after the plaintiff had purchased, Hayward commenced an action to foreclose his mortgage, in which Becket intervened; and such proceedings were had that judgment of foreclosure was entered, and Hayward, on the twenty-sixth of July, 1880, purchased at the foreclosure sale and received his certificate. The complaint prayed for an accounting, and that the plaintiff be adjudged to have a lien on the said property for the partnership debts. The answer of defendant Hayward denies that the owners of the "Jersey Claim" ever worked the same as partners to any later period than the month of August, 1875, and avers that from that date to May 29, 1877, no partnership work was done on the claim; and also denies that the defendant from the sixth to the twelfth day of June, 1878, or at any time, ever worked the said claim in partnership with the alleged other owners, and with reference to the conveyance by Brown to him on the sixth day of June, 1878, he was a mere formal party and had no beneficial interest, but took the same in trust for certain of the owners, to whom he conveyed it. From the statement it appears that evidence was introduced to the following effect:

"The evidence tended to show that about the month of April, 1877, partnership work was stopped on said claims, and no work whatever was done on said claims, except that said Brown from time to time, of his own motion and at his own risk, * * * did some work on the claims; * * * that after Sarah Reamer acquired said interest, no work whatever was done on said claims; and that after said Reamer

sold to Fred Howell, and said Howell had sold to Morgan
Howell, etc., to wit, June 11, 1878, they and the said J. H.
Brown held a company meeting, and agreed upon the terms
upon which they would work the said claims; and that all the
work and expenses done and incurred on said claims and set
forth in plaintiff's complaint as his cause of action for an ac-
counting herein, were done and incurred under and in pursu-
ance of said agreement;    *    *    *    and that neither the said
Sarah Reamer nor defendant Hayward had ever been in any
way party or privy to said arrangement or agreement.  *  *  *
The plaintiff then introduced evidence tending to prove all
the allegations contained in the complaint.    *    *    *    It ap-
peared on said trial, from the evidence and admissions of
plaintiff, that the alleged conveyance by J. H. Brown to de-
fendant Hayward, on June 6, 1878, of one quarter interest in
the property described in the complaint, was not presented or
delivered to said Hayward until the twelfth day of June, at
the same time when and as part of the transaction in which
said Hayward conveyed the said interest to plaintiff's grant-
ors, as in said complaint alleged; and that said Hayward at
no time had any beneficial interest in said transaction or par-
ticipated in or consented to the working of said mine as a
partner, or otherwise, but simply received and executed said
conveyances simultaneously as an accommodation to plaintiff
and said grantees of said Hayward."

*C. A. & C. Tuttle,* for Appellant.

In mining partnerships the *delectus personœ* does not exist.
Neither the death of a partner, nor the sale of an interest by
one partner, dissolves the partnership.  A purchaser of an
interest becomes an involuntary partner, though he takes no
part in the management.  (*Taylor* v. *Castle,* 42 Cal. 369; *Dur-
yea* v. *Burt,* 28 id. 569.)

Each member of a mining partnership has a lien on the
mine for all advances made by him.  The purchaser of an
interest in a mine takes it subject to any lien existing in
favor of a copartner, for advances already made.  (*Duryea*
v. *Burt,* 28 Cal. 569.)  Tenants in common, working a mine,
are partners.  (*Dougherty* v. *Creary,* 30 Cal. 290.)

*Hale & Craig,* for Respondent.

As to the five-eighths interest held by Hayward, it had its inception in a lien created by mortgage long before the alleged partnership agreement and transactions occurred on account of which the partnership accounting is demanded in this action, and therefore is not held by Hayward subject to any partnership lien which could be so created. (C. C., §§ 2511–2517.)

Ross, J.:

The Court below properly granted a nonsuit as to the defendant Hayward, because the proof on the part of the plaintiff showed that Hayward was not a partner at the time of the commencement of the action, nor at any time when the transactions occurred of which an accounting is demanded; and because the interest of Hayward in the premises had its inception prior to June 11, 1878, after which time it was that the agreement was made out of which plaintiff's claim for an accounting arises, and to which agreement Hayward was neither a party nor privy.

Judgment and order affirmed.

MYRICK and McKINSTRY, JJ., concurred.